1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLY J. P.,

                          Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

Case No. 2:18-cv-01432-TSZ-BAT

**REPORT AND
RECOMMENDATION**

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") finding her not disabled. Dkt. 1. Plaintiff contends the ALJ erred in his evaluation of the medical opinion evidence and failed to provide clear and convincing reasons to reject her testimony.

The undersigned concludes that the ALJ did not commit reversible error in evaluating Plaintiff's credibility, but harmfully erred in evaluating the medical opinion evidence relating to Plaintiff's physical impairments. Because the record does not establish a clear entitlement to benefits, the ALJ's errors do not compel an award of benefits.  The Court accordingly recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

On July 14, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 13, 2011.

**REPORT AND RECOMMENDATION** - 1

The claim was denied initially on April 13, 2015, and upon reconsideration on August 17, 2015. Plaintiff first appeared and testified at a hearing held on January 26, 2017, where she was represented by counsel. The ALJ continued the hearing to obtain the testimony of an impartial medical expert. On April 10, 2017, a second hearing was held where Plaintiff appeared and was represented.

Utilizing the five step sequential evaluation process,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 1, 2011 through her date last insured of June 30, 2017. At steps two and three, the ALJ found Plaintiff's Roux-en-Y syndrome with nausea and vomiting, motility disorder, history of kidney stones, right rotator cuff impairment, asthma, and obesity are severe impairments and that these impairments do not meet the requirements of the Listings. At step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with some exceptions (can frequently reach with the right upper extremity, and cannot climb, balance, stoop, kneel, crouch, or crawl and must avoid concentrated exposure to vibrations, pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and hazards). Tr. 18-21. At step five and based on the testimony of a vocational expert, the ALJ found Plaintiff was capable of performing her past relevant work as a community relations director and could also have performed the requirements of representative occupations such as Touch Up Screener (DOT #726.684-110), which is sedentary, unskilled (SVP 2) work with an estimated 15,000 jobs in the national economy and 200 jobs in Washington state; Escort Vehicle Driver (DOT #919.663-022), which is sedentary, unskilled (SVP 2) work with an estimated 20,000 jobs in the national economy and 400 jobs in

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

**REPORT AND RECOMMENDATION** - 2

Washington state; and Order Clerk (DOT #209.567-014), which is sedentary, unskilled (SVP 2) work with an estimated 20,000 jobs in the national economy and 200 jobs in Washington state. Tr. 27-29.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.*

## I.    Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the*

1   *Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639,

2   642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in

3   the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are

4   relevant" in deciding how to weigh medical opinions. *Id*. at 603. The ALJ can meet this burden

5   by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

6   stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751

7   (9th Cir. 1989)). The ALJ does not need to discuss all the evidence the parties present but must

8   explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v.*

9   *Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).

10       To reject the uncontradicted opinion of either a treating or examining physician, an ALJ

11   must provide clear and convincing reasons. *Revels*, 874 F.3d at 654. When other evidence

12   contradicts the treating or examining physician's opinion, the ALJ must still provide "specific

13   and legitimate reasons" to reject that opinion. *Id*. A non-examining physician's opinion may

14   constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other

15   independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

16   The opinion of a non-examining physician does not, standing alone, constitute substantial

17   evidence concerning the rejection of the opinion of either an examining physician or a treating

18   physician. *Lester*, 81 F.3d at 831.

19       **A.    Mental Impairments**

20           **1.    Anselm Parlatore, M.D. – Examining Physician**

21       Dr. Parlatore is a psychiatric consultative examiner who performed a psychiatric

22   evaluation of Plaintiff on March 26, 2015. Tr. 653. Dr. Parlatore diagnosed "reactive-situational

23   depression and PTSD." Tr. 655. He concluded Plaintiff has the ability to reason and understand;

**REPORT AND RECOMMENDATION** - 4

her memory, concentration, pace and persistence are all organically and cognitively intact; but her "social interaction and adaptation have been markedly affected. She does simple, repetitive domestic chores with help from her parents, but has been unable to function with peers, supervisors or the general public." *Id.* With regard to her ability to engage in formal work activities, Dr. Parlatore concluded that her ability has "been impacted by her PHYSICAL LIMITATIONS", and with regard to the impact of those physical limitations on her ability to be gainfully employed, Dr. Parlatore "deferred to an appropriate medical specialist." Tr. 656 (emphasis in original).

The ALJ provided three reasons for giving this opinion partial weight. Tr. 19. First, he noted that Dr. Parlatore's opinion of marked limitations in Plaintiff's ability to interact with others and adapt was inconsistent with the longitudinal treatment history. *Id.* This was not error as an ALJ may discount a doctor's opinion that is inconsistent with the evidence of record. *See Morgan*, 169 F.3d at 601 (physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record). As noted by Defendant, the record evidence consistently showed that Plaintiff's depression was controlled with medications (Tr. 18, 322); she denied experiencing any depressive symptoms (Tr. 18, 668, 804, 807, 832, 864, 909); and, her mental status examinations were mostly unremarkable (Tr. 19, 450, 458, 520, 540, 575, 615, 623, 630, 688, 754, 912, 917).

Second, the ALJ noted that Dr. Parlatore failed to point to any specific objective findings to support his conclusion that Plaintiff was markedly limited in the areas of social interaction and adaptation. Dr. Parlatore simply concluded that "[Plaintiff] does simple, repetitive domestic chores with help from her parents, but has been unable to function with peers, supervisors or the general public." Tr. 655. Although Dr. Parlatore noted Plaintiff's past medical and psychiatric

history, he did not tie his conclusion of a marked limitation to any particular symptoms or negative mental status examination findings. *See* Tr. 19, 655. A medical opinion that lacks support is due no weight. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (internal quotation marks omitted)).

Third, the ALJ noted that Dr. Parlatore only examined Plaintiff on one occasion. Tr. 19. While the number of visits a claimant has made to a particular provider is a relevant factor in assigning weight to an opinion, 20 C.F.R. 404.1527(b), the Commissioner acknowledges that discounting Dr. Parlatore's opinion on the basis that he examined Plaintiff only one time is not be a legally sufficient reason to give the opinion less weight and this was error.

In summary, because the ALJ provided two legally sufficient reasons for discounting Dr. Parlatore's opinion, the ALJ did not harmfully err.

### 2. Richard Borton, Ph.D. and Carla van Dam, Ph.D. – State Agency Reviewing Physicians

The ALJ gave the opinions of Dr. Borton and Dr. van Dam little weight because he found their opinions to be internally inconsistent. Tr. 19. The doctors first opined that Plaintiff is *moderately limited* in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Tr. 147; Tr. 163. They also concluded that Plaintiff is *moderately limited* in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 147; Tr. 163. When asked to "explain in narrative form the sustained concentration and persistence capacities and/or limitations", the doctors stated:

> The claimant is cognitively capable of simple and complex tasks. Concentration and pace may vary based on symptom intrusion, but claimant can persist for the completion of tasks within the tolerances of competitive employment.

*Id.*

The ALJ found that these "opinions are internally inconsistent. While they suggest the claimant has 'moderate' limitations in her abilities to perform activities within a schedule and maintain regular attendance, they do not actually describe the extent of any such limitations in their narrative statement." Tr. 19.

Plaintiff contends the ALJ erred because he failed to explain how Plaintiff's ability to "persist" conflicts with "intermittent lapses in concentration" which would affect her pace, which is a different ability. However, the ALJ rejected these opinions for the reason that the doctors failed to adequately support their conclusion of a moderate limitation with relevant medical evidence, *i.e.*, clinical or laboratory findings. This was not error. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *see also Chaudhry*, 688 F.3d at 671 (ALJs can reject medical opinions that are "brief, conclusory, and inadequately supported by clinical findings.") (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and alteration omitted)).

**B.      Physical Impairments**

**1.      David Patterson, M.D. – Treating Gastroenterologist**

Dr. Patterson is Plaintiff's treating gastroenterologist and a regional specialist in gastroparesis and Roux-en-Y syndrome. Tr. 505. Dr. Patterson opined that beginning in February of 2012, Plaintiff's gastroparesis and Roux-en-Y syndrome resulted in frequent interference with attention and concentration, the necessity for 8-10 breaks per day, and work absences of more than four days per month. Tr. 505, 920, 856-857, 859, 854, 27. In his March 27, 2015 chart note,

1    Dr. Patterson opined that Plaintiff's symptoms were "disabling" her from work on a permanent

2    basis. Tr. 472-473, 659.

3         The ALJ gave four reasons for giving Dr. Patterson's opinions slight weight: (1) the

4    opinions were inconsistent with the evidence of record, including the doctor's own treatment

5    notes; (2) the opinions were not supported by objective findings; (3) Dr. Patterson relied on

6    Plaintiff's discounted self-reports; and (4) the statements in Plaintiff's treatment records

7    describing her as "medically disabled" within the context of her social history simply

8    documented Plaintiff's reported history, not the opinion of a treating provider. Tr. 27.

9         The ALJ did not appear to take into account that Dr. Patterson's opinions were based on

10   his significant experience with Plaintiff, his own treating records, his review of records from

11   other treating doctors (*i.e.*, Dr. Chang's multiple CT scans and four operative reports, Dr.

12   McCormick's endoscopy report, Dr. Gluck's endoscopy), and the results of a gastric emptying

13   study ("GES") during which Plaintiff vomited and which Dr. Patterson referenced as a "positive

14   test result." Tr. 664-667, 472-473, 659, 873, 881-882, 862,823, 817, 860, 853, 856.

15        The ALJ also failed to defer to Dr. Patterson's opinion as a treating gastroenterology

16   ("GI") specialist with a regionally recognized specialty in gastroparesis and Roux-en-Y

17   syndrome. Tr. 505. *See* 20 C.F.R.§ 404.1527(c)(5); *Revels*, 874 F3d at 654 (a doctor's specialty

18   is especially relevant with respect to diseases that are "poorly understood" within the rest of the

19   medical community; citing *Benecke v. Barnhart*, 379 F.3d 587, 594 n. 4 (9th Cir.2004)).

20   Although the ALJ acknowledged that Dr. Patterson is a gastroenterologist, he did not recognize

21   his subspecialty in gastroparesis, and referred to Dr. Patterson only as "another treating

22   physician". Tr. 27.

23

**REPORT AND RECOMMENDATION** - 8

The ALJ also erred in substituting his own lay opinion for that of Dr. Patterson's when he concluded that Dr. Patterson's opinion that Plaintiff's symptoms of nausea, vomiting, and abdominal pain were disabling were "inconsistent with the objective evidence." The ALJ's opinion was based on Plaintiff's "entirely normal physical examination" (with only mild distention, a soft and tender abdomen, and no explanation for her symptoms) on the day Dr. Patterson rendered that decision. The ALJ did not consider the record as a whole when evaluating Dr. Patterson's opinion. Although no "mechanical" explanation for Plaintiff's symptoms was found, pathology on her resected stomach showed a reactive gastropathy, indicating chemical injury to her gastric mucosa (Tr. 537), and four prior surgeries (the first surgically removing her stomach from her digestive tract; the second for mesenteric defect at the jeunojejunostomy and adhesions; the third to place a tube in her stomach remnant, which vented 1 liter of bilious output on a daily basis; and the fourth, to entirely remove the rest of her stomach, during which a "gastric pouch" or gastrojejunal anastomosis was constructed out of her small intestine and the tube which formerly vented a liter of bilious fluid daily was removed). Tr. 659, 446, Att.D.

Dr. Patterson concluded that symptoms of "abdominal pain that is generalized, crampy and frequent, with no specific triggers besides eating," in the context of medically determinable "severe" Roux-en-Y syndrome and gastroparesis (or "motility disorder"), limited Plaintiff's functionality to the extent described. Tr. 856. The objective evidence supporting his opinion included records documenting the Roux-en-Y bypass procedure, a complete gastrectomy, and observed vomiting during the GES. Tr. 465-467, 435, 856, 472. While the ALJ focused on "normal" objective findings observed on the outside of Plaintiff's abdomen, such as "mild distention", Dr. Patterson focused on the internal objective evidence (complete lack of a stomach

1  and gastrojejunal anastomosis). Tr. 27, 856. As a lay person, the ALJ was simply not qualified to

2  interpret the raw medical data in functional terms. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.

3  1999); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975) (ALJ is forbidden from making

4  his own medical assessment); *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999)(same).

5         Defendant's testifying specialist, Dr. Jilhewar, also focused on the "surgical pathology"

6  and testified that "some patients have severe pain without any objective clinical findings." Tr.

7  109, 111. Dr. Jilhewar agreed that Plaintiff has "dump syndrome",[2] and concurred with Dr.

8  Patterson's March 27, 2015 opinion that, at least as of that date, Plaintiff had "less than full time

9  capacity to work". Tr. 112.

10        The ALJ also concluded that Dr. Patterson's opinions are inconsistent with his treatment

11  notes because he relied on a "gastric emptying study (GES) … [which] provided "no meaningful

12  information" because "she vomited 90% of the meal". Tr. 27, 472. The ALJ erred in this

13  reasoning by substituting his own evaluation for that of Dr. Patterson, a regional expert in the

14  field of gastroparesis. Dr. Patterson points to "urgent vomiting" and the GES as "clinical findings

15  and objective signs" which support his opinions regarding the severity of Plaintiff's pain and

16  other symptoms as it was during her GES that urgent vomiting was observed. Tr. 856, 472.

17  While the ALJ focused on the lack of meaningful results with regard to measurement of the

18  speed of gastric emptying, Dr. Patterson focused on Plaintiff's observed "urgent vomiting"

19  during the GES. Tr. 27, 856,472. The ALJ does not explain why the lack of speed measurement

20

21  [2] Dumping syndrome is a condition that can develop after surgery to remove all or part of your stomach or after surgery to bypass your stomach…Also called rapid gastric emptying, dumping

22  syndrome occurs when food moves… into your small bowel too quickly. Most people with dumping syndrome develop signs and symptoms, such as abdominal cramps and diarrhea…[and]

23  Signs and symptoms may include: nausea, vomiting, abdominal cramps... https://www.mayoclinic.org/diseases-conditions/dumping-syndrome/symptoms-causes/syc-20371915

**REPORT AND RECOMMENDATION** - 10

1  should be more important than observed urgent vomiting and the ALJ's substitution of his own

2  lay opinion for that of the treating gastroparesis specialist in this regard is harmful error.

3       The ALJ also discredited Dr. Patterson's opinions by questioning the credibility of

4  Plaintiff's complaints. *But see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th

5  Cir.2008) (ALJ cannot reject treating physician opinion by rejecting a claimant's symptom

6  report, where the doctor does not discredit those complaints and supports his ultimate opinion

7  with his own observations); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed Appx 709,

8  711 (9th Cir 2013)(same). Dr. Patterson found Plaintiff's symptom reports consistent with her

9  impairments, and nothing in the record suggests that he relied more heavily on her complaints

10  than on his own observations. Tr. 857, 853, 856, 472, 664-667, 659.

11       In addition, the ALJ erred in failing to consider Dr. Patterson's opinions in the context of

12  those of Plaintiff's treating surgeon Dr. Chang; primary care physician Dr. Clark; and pain

13  management specialist Dr. Souder; all of whom agreed that chronic nausea, vomiting, and pain

14  were "certainly limiting her life"; limiting Plaintiff to less than full time work, and rendering her

15  incapable of even low stress jobs; and unable to work. Tr. 460, 868-871, 680, 678, 586.

16       **2.    Ashok G. Jilhewar – Impartial Medical Expert**

17       The ALJ continued Plaintiff's first hearing to obtain the testimony of an impartial

18  medical expert, Dr. Jilhewar, who testified at the April 10, 2017 hearing. Dr. Jilhewar concluded

19  from his review of Plaintiff's records, that Plaintiff could perform a sedentary level of work but

20  as of March 27, 2015, Plaintiff was incapable of standing and walking for two hours out of eight.

21  The ALJ rejected this latter portion of Dr. Jilhewar's opinion because it was based on the

22  "opinion of Dr. Patterson" and "an impartial medical expert does not decide what weight is to be

23  given to a particular opinion as that is the role of the Administrative Law Judge." Tr. 26.

1    Dr. Jilhewar's testimony reflects that he did not rely solely on Dr. Patterson's opinion or

2    opine on the weight to be given that opinion. Dr. Jilhewar acknowledged Plaintiff has "dump

3    syndrome" and Roux-en-Y syndrome, and that, in the context of those disorders, "some patients

4    have severe pain without any objective clinical findings"; Plaintiff was treated "as if she had

5    severe pain"; and Dr. Patterson "examined and treated the patient for a long time. So – and he's

6    seeing the person, and …can offer [an accurate assessment] without objective clinical findings".

7    Tr. 109, 112. Dr. Jilhewar concurred with Dr. Patterson's March 27, 2015 assessment based on

8    "the intensity of treatment"; the consistency of Dr. Patterson's assessment each time; consistency

9    with the assessment of the pain clinic physician; and, the significant medications prescribed

10   (including Dronabinol (Marinol) which is typically prescribed for cancer patients with wasting

11   syndrome). Tr. 113. Thus, the ALJ erred in concluding that Dr. Jilhewar was basing his opinion

12   solely on the opinion of Dr. Patterson.

13   The ALJ also rejected Dr. Jilhewar's opinion because Dr. Jilhewar testified that he "could

14   not accept the frequency of the …vomiting" reported by Plaintiff because her "electrolytes were

15   [not] abnormal". Tr. 26. Despite his refusal to credit the frequency of Plaintiff's vomiting and

16   normal electrolyte lab results however, Dr. Jilhewar still held the opinion that Plaintiff was

17   incapable of full time work as of March 27, 2015. Tr. 114-115. Thus, the ALJ's rejection of his

18   own expert's opinion on the basis of findings which he also reviewed is, an improper substitution

19   of the ALJ's lay opinion, resulting in harmful error. *See Tackett*, 180 F.3d at 1102-03 (ALJ may

20   not substitute own opinion for the findings and opinion of a physician); *Lish v. Berryhill*, 2:17-

21   cv-00743-JCC-TLF, 2018 WL 1040193, at *5 (WD Wash Jan 31, 2018), *report and*

22   *recommendation adopted*, 2:17-cv-00743-JCC, 2018 WL 994176 (WD Wash Feb 21, 2018);

23   *Day*, 522 F.2d at 1156 (ALJ is forbidden from making his own medical assessment).

**REPORT AND RECOMMENDATION** - 12

1    The ALJ also erred in preferring reviewing physician Dr. Jilhewar's opinion that Plaintiff

2    could work prior to March, 2015 over that of treating gastroenterologist Dr. Patterson's opinion

3    that disability began in February, 2012 on the basis that "there was no apparent objective medical

4    evidence or findings that could substantiate her level of pain." Tr. 25. Dr. Jilhewar testified that

5    in the context of "severe Roux-en-Y syndrome", "some patients have severe pain without any

6    objective clinical findings". Tr. 110, 111. As noted by Plaintiff, Dr. Jilhewar's testimony is

7    confirmed by the medical literature, which indicates that post Roux-en-Y gastric bypass patients

8    "ha[ve] symptoms of unknown etiology", and that "[c]linical management of gastroparesis is

9    based on ruling out of mechanical causes and serum electrolyte imbalances", indicating that

10   symptoms of abdominal pain, nausea, and vomiting exist in the absence of abnormal electrolytes,

11   and in the absence of "mechanical causes", such as obstructions. Dkt. 14, Att. B, C. Thus, the

12   ALJ harmfully erred by "effectively requir[ing] 'objective' evidence for a disease that eludes

13   such measurement." *See e.g.*, *Benecke*, *supra* at 594.

14       Dr. Patterson was in a better position to assess the frequency and impact of Plaintiff's

15   emesis. Tr. 25-26, 920, 853-859, 472-473, 659. For example, Dr. Patterson considered the

16   volume of material which Plaintiff brought up, noting that on occasion her vomiting consisted of

17   "dry heaves", or "foamy material" consisting of saliva and partly digested food. Tr. 881, 665. If

18   Plaintiff was bringing up no material (as indicated by "dry heaves") or only small amounts (as

19   indicated by foamy saliva mixed with undigested food), then her lack of electrolyte imbalance is

20   not inconsistent with her report of frequent intermittent persistent nausea and vomiting, as

21   reported in Dr. Patterson's treatment notes. Tr. 665-666, 472-473, 659, 873, 881-882, 776,

22   862,892, 860, 856, 36. Dr. Patterson also considered that Plaintiff took multiple supplements and

23   vitamins, including calcium, probiotics, B12, and Thiamine. Tr. 665. It is reasonable to infer that

**REPORT AND RECOMMENDATION** - 13

said supplements were intended to replace the minerals lost due to emesis and her lack of

stomach. Further, the record indicates that, on occasion, she was dehydrated from nausea and

vomiting; on another occasion, her iron level was "critically low", despite taking 60 mg iron

daily, (she was advised to triple her dose); and she required intravenous iron infusions. Tr. 817,

422, 536, 539. Her B12 level was watched carefully, as was her calcium dosage. Tr. 424, 423. As

there is no indication that Dr. Jilhewar considered the effect of these supplements on Plaintiff's

electrolyte level, or the amounts vomited, the ALJ erred in preferring the non-examining

physician's opinion over that of Plaintiff's treating specialist. The ALJ also failed to consider

records documenting that Plaintiff appeared fatigued, depressed, anxious, in pain, and tearful on

multiple occasions; missed appointments due to pain; or had anxious or depressed mood. Tr. 18-

19, 525, 613, 623,675, 673, 599, 492, 694, 655, 690, 38. Further, while the ALJ noted that

Plaintiff reported "persistent fatigue" prevented her from working, he failed to consider evidence

supporting her report, despite his regulatory mandate to consider the record "as a whole". Tr. 22.

Plaintiff treated with a hematologist for hypoferrinemia causing fatigue, which was a

"postoperative complication of bariatric surgery". Tr. 536-537, 343, 322. The ALJ inferred that

because lab tests were not consistently deficient over time, Plaintiff's fatigue was resolved and

she would no longer have the need for unscheduled breaks or miss work. Tr. 23, 858-859, 855.

But the record demonstrates that Plaintiff's fatigue was not resolved after taking supplements in

July of 2012. Dr. Patterson noted fatigue in 2013 and "profound fatigue" in 2015; she was seen

for "significant fatigue" which was worsening in 2013; prescribed Folbic for fatigue in 2014 and

Orthotryi-cyclen daily for fatigue in 2017. Dr. Clark concurred that "persistent fatigue" and low

energy did not allow her to work; she was seen at the ER for generalized lethargy in 2012; and,

Dr. Chang noted she was "extremely fatigued". Tr. 666, 881, 536, 537, 507-508, 615, 610, 574,

**REPORT AND RECOMMENDATION** - 14

1    703, 698-699, 690, 50-51, 45-46, 343, 322, 531, 534, 527, 518. This evidence of Plaintiff's

2    significant fatigue is probative of her ability to sustain full time employment without excessive

3    rest periods and absences. Thus, the ALJ's failure to consider this evidence in light of the

4    opinions of Dr. Jilhewar and Dr. Patterson was error. *See Vincent*, 739 F.2d at 1395 (ALJ must

5    explain why significant, probative evidence has been rejected).

6         **3.     Lilly Chang, M.D. – Treating Physician**

7         Dr. Chang saw Plaintiff on January 18, 2013, when Plaintiff returned to Virginia Mason

8    Medical Center for ongoing treatment of "chronic abdominal pain, nausea and treatment for

9    gastroparesis." Tr. 505. Dr. Chang listed Plaintiff's subjective symptoms and medical history and

10   then noted that she spoke with Plaintiff at length about other interventions. In conclusion, Dr.

11   Chang recommended that Plaintiff "see a specialist (Dr. David Patterson) in gastroparesis which

12   is her presumed diagnosis." *Id.* Dr. Chang noted that Plaintiff was agreeable to further evaluation

13   and then noted "paperwork was completed for long term disability." *Id.*

14        The ALJ gave little weight to Dr. Chang's suggestion that Plaintiff is disabled because

15   her medical note was based primarily on Plaintiff's subjective statements, and not on "physical

16   examination findings", and the absence of observed "pain or distress".  Tr. 26. While the lack of

17   objective findings are specific and legitimate reasons for discounting a doctor's opinion, Dr.

18   Chang is the Roux-en-Y surgeon who removed Plaintiff's stomach and therefore, it is reasonable

19   to conclude that Dr. Chang would have relied on more than Plaintiff's subjective statements.

20        Dr. Chang's notes also document "severe and life altering nausea, associated with

21   intermittent vomiting", which was "certainly limiting her life." Dr. Chang assessed "unrelenting"

22   chronic nausea and gastric pain, attributed to gastroparesis of the gastric remnant, and low

23   energy. Tr. 458, 460, 452, 446, 443, 570-571, 432. As a gastric surgeon, and based on her

**REPORT AND RECOMMENDATION** - 15

diagnosis of gastroparesis, Dr. Chang would also have known of the "well known side effects" of gastric surgery and would have applied that medical knowledge when formulating her opinion regarding Plaintiff's functionality.

The ALJ failed to give valid reasons for the weight he gave to Plaintiff's treating source's medical opinion and failed to take into account the length or the nature of the treating relationship, the supportability of Dr. Chang's opinion, the level of Dr. Chang's knowledge of gastric bypass surgery and in particular, knowledge of Plaintiff's multiple gastric surgeries. *See* 20 C.F.R. § 404.1527(c)(2).

### 4.    Harold G. Clark, M.D. – Treating Physician

Dr. Clark was Plaintiff's primary care physician for many years and saw Plaintiff every three to six months. In December 2013, Dr. Clark did not think Plaintiff was employable because Plaintiff "[s]till has significant disability with nausea, abd [sic] pain which keeps here from being able to be active during the day. Also the pain meds affect her concentration and focus." Tr. 586. The ALJ gave this assessment no weight because he found that it was inconsistent with Plaintiff's denial of any side effects and her normal cognitive functioning. Tr. 26. Plaintiff notes, however, that she consistently reported abdominal pain, nausea, and vomiting (Dkt. 16 at 2 n.1) and suffered side-effects from her medication. Dkt. 14 at 14-16 (internal citations omitted).

In December 2016, Dr. Clark completed a physical residual functional capacity questionnaire (Tr. 868-871), indicating that Plaintiff suffered from recurring severe nausea, vomiting, and abdominal pain, all of which were exacerbated by depression. *Id.* at 868. He opined that Plaintiff's experience of pain and other symptoms were severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks; that she was incapable of performing even low stress jobs; and that she would walk only 2 blocks, and sit

for about 4 hours and stand/walk for less than 2 hours in an 8-hour working day (with normal breaks). *Id.* at 869. He also opined that Plaintiff would need to take unscheduled breaks to rest every day for 1-2 hours and would likely be absent from work more than four days per month. *Id*. at 870-871.

The ALJ gave this opinion slight weight because he found it to be inconsistent with the physical examination findings, lack of observations of Plaintiff in distress or pain, and Plaintiff's statements to treating providers and her activities. Tr. 26. As an example, the ALJ pointed to Dr. Clark's suggestion that Plaintiff's symptoms "constantly" interfere with attention and concentration for even simple tasks as being inconsistent with Plaintiff's ability home school her child, drive a car, and repeated indications in treatment notes that Plaintiff demonstrated normal attention and concentration. While the ALJ can discount opinion evidence when a physician assesses limitations that appear to be inconsistent with a claimant's level of activity (*see Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), it appears that Dr. Clark did not rely exclusively upon the effects of Plaintiff's medication to conclude that her memory and concentration were affected as he also referenced her abdominal pain and nausea. In addition, no treating or examining physician disagreed with Dr. Clark regarding Plaintiff's ability to work full time. Thus, the ALJ failed to take into account the full record and the level of Dr. Clark's knowledge of Plaintiff's symptoms over his years of treatment as Plaintiff's primary care physician. *See* 20 C.F.R. § 404.1527(c)(2).

In conclusion, because the ALJ omitted from the RFC the limitations that he erroneously rejected in the opinions of Dr. Patterson, Dr. Jilhewar, Dr. Chang, and Dr. Clark, these errors were not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error deemed harmless only if "inconsequential" to "ultimate nondisability determination").

**REPORT AND RECOMMENDATION** - 17

Accordingly, the Court should remand for a full reexamination of Plaintiff's physical conditions—specifically, gastroparesis and Roux-en-Y syndrome.

## II.      The ALJ Did Not Err in Assessing Plaintiff's Testimony

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess[ ]" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen*, 749 F.2d at 579. Even if some of the reasons for discrediting a claimant's testimony should properly be discounted, this does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan*, 242 F.3d at 1148. To reject a claimant's subjective description of symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester,* 81 F.3d. at 834. Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Id.*

The ALJ summarized Plaintiff's allegations at the January 2017 hearing as follows:

> …the claimant testified she has days in which she feels too poorly to get out of bed, and that this happens four to five days per week.  She said she cannot work because she vomits multiple times a day, from two to twelve times per day, she rests periodically throughout the day, and that she cannot put two thoughts together. She said it is not uncommon for her to be in a conversation and "completely forget" what is being talked about. The claimant said she thought this might be a side effect of the medications she is on. She also described forgetting significant events, such as taking her daughter to get oral surgery, going through a storm door, and going to a movie. The claimant previously alleged she has "constant and persistent pain and incapacitating nausea and vomiting" (6El), and difficulty with standing, walking, and concentrating (6E6).  She also alleged non-stop nausea that was so severe at times she could not talk or move or she would "lose it" (6Fl) and that "persistent fatigue" prevented her from working (9F7).

Tr. 22.

**REPORT AND RECOMMENDATION** - 18

1    The ALJ discounted Plaintiff's allegations because: (1) they were incompatible with

2  evidence of improvement; (2) her level of activity demonstrated she was more capable than

3  alleged; (3) treatment records did not support her allegations; and (4) an inconsistent statement

4  regarding medication side effects undermined the reliability of her statements. Tr. 24-25. These

5  are relevant factors in assessing the credibility of a claimant. *See*, *e.g.*, *Fair v. Bowen*, 885 F.2d

6  597, 603 (9th Cir. 1989); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). However,

7  the ALJ did not give clear and convincing reasons as to each factor.

8    First, the ALJ concluded that the worst of Plaintiff's symptoms lasted for less than one

9  year and by July 2012, had greatly improved. Tr. 22. This is not a clear and convincing reason

10  for rejecting Plaintiff's testimony as the ALJ failed to consider the entirety of Plaintiff's medical

11  record in reaching this conclusion. For example, after July of 2012 and prior to January 2013,

12  Plaintiff went to the ER with abdominal pain; nausea and abdominal pain had returned to the

13  level she had prior to her last surgery; chronic abdominal pain continued; despite Zofran for

14  nausea and Percocet for pain, she still did not feel well enough to work; pain returned or was

15  back (Tr. 531, 530, 520, 518, 517, 511, 509); and in January 2013, Dr. Chang noted she woke up

16  with nausea and vomiting, and was in "the same exact state she [in] prior to any intervention"

17  (Tr. 505-506). Thus, the ALJ erred as he failed to draw a reasonable inference from the medical

18  evidence. *See* SSR 86-8p ("reasonable inferences" may be drawn).

19    Next, relying on Dr. Jilhewar's testimony, the ALJ concluded that the objective medical

20  findings are inconsistent with the allegations of daily vomiting, *i.e.*, blood work and lab tests

21  showed no deficits in electrolyte levels, nutritional labs showed improvement and were within

22  normal ranges, and general chemistry testing in 2012 and 2013 showed almost entirely normal

23  findings. Tr. 23. As previously noted however, despite his refusal to credit the frequency of

**REPORT AND RECOMMENDATION** - 19

1   Plaintiff's vomiting and despite normal electrolyte lab results, Dr. Jilhewar still held the opinion

2   that Plaintiff was incapable of full time work as of March 27, 2015. Tr. 112, 115, 659.

3           Next, the ALJ noted that the objective physical examinations throughout the record are

4   inconsistent with extremely limiting physical conditions. The ALJ noted normal physical

5   examinations from 2013 into 2016; Dr. Patterson's conclusion that there was no mechanical

6   explanation for Plaintiff' symptoms; and the lack of drowsiness or cognitive impairment. Tr. 23.

7   The ALJ also noted Plaintiff's lack of pain and distress during medical appointments and

8   providers indicating "no pain behavior", despite Plaintiff's allegations of serious and constant

9   pain and other symptoms. *Id.* However, for the reasons previously stated with regard to the

10  ALJ's evaluation of medical opinion evidence relating to Plaintiff's physical limitations, this

11  conclusion is inconsistent with the whole of the medical evidence.

12          The ALJ also concluded that Plaintiff's activities during the relevant period, such as

13  frequent travel and caring for her daughter, suggests that her alleged symptoms and limitations

14  may have been overstated. Plaintiff traveled frequently during the relevant period (two weeks in

15  October 2013; travel to Mexico in November 2013 and April 2014; out of town in August 2014;

16  a trip to Whistler, British Columbia in October 2014; two weeks in Mexico in November 2014; a

17  request for an early refill on her medications for a July 2015 trip to Oregon). At the January 2017

18  hearing, Plaintiff denied going to Oregon in 2015 and to Mexico in November 2016 because she

19  was too ill and testified that the only reason she went to Mexico was because her parents could

20  not leave her alone and she was sick the entire time. However, it was not error for the ALJ to

21  consider the number of trips taken during the relevant period, particularly trips requiring airplane

22  flights taking several hours.

23

**REPORT AND RECOMMENDATION** - 20

1    In addition, the ALJ did not err when he noted that until recently before the January 2017

2    hearing, Plaintiff lived alone with her 8 year old daughter and homeschooled her daughter for

3    about two years for one day a week and continued to drive during the relevant period, activities

4    which require attention, the ability to react quickly, make decisions and use judgment.

5    Finally, the ALJ noted that Plaintiff's allegations were inconsistent with statements she

6    made to treating physicians about lost medications and a September 2016 test by a treating

7    chronic pain specialist who indicated Plaintiff was not taking oxycodone despite a prescription

8    for five per day and her statements that medication significantly improved her pain levels. Tr.

9    22-25. With regard to the oxycodone prescription, the same treatment note referred to by the ALJ

10   indicates that, in addition to Oxycodone, Plaintiff used Fentanyl Patches; Trazodone; and

11   Cyclobenzaprine to control her pain. Thus, it is not entirely clear Plaintiff might not have always

12   required Oxycodone in addition to her other medications and therefore, this not a "clear and

13   convincing reason" to reject her testimony. However, it was not unreasonable for the ALJ to

14   discount Plaintiff's testimony that she experienced negative side effects from various

15   medications because the testimony was contradicted by record evidence showing she repeatedly

16   denied having such side effects and denied feeling over sedated or over medicated. Tr. 24, 668,

17   670, 673, 804, 807, 810, 814.

18   In sum, the ALJ identified valid reasons supporting his determination to discount

19   Plaintiff's testimony, which were "sufficiently specific to allow a reviewing court to conclude

20   the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d

21   882, 885 (9th Cir.2004); see also *Thomas*, 278 F.3d at 958. Even though the ALJ relied on more

22   than one invalid reason, such reliance is harmless because the error "does not negate the validity

23   of the ALJ's ultimate credibility conclusion." *Carmickle v. Commissioner, Social Sec. Admin.*,

**REPORT AND RECOMMENDATION** - 21

1  533 F.3d 1155, 1160 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d

2  1190, 1197 (9th Cir.2004).

3  **III.    Scope of Remand**

4         Plaintiff contends that the Court should remand this matter for an award of benefits.  The

5  Court may remand for an award of benefits where the record is fully developed and additional

6  proceedings would serve no useful purpose; the ALJ failed to provide legally sufficient reasons

7  for rejecting evidence, and if the improperly discredited evidence were credited as true, the

8  claimant would be disabled.  *Garrison,* 759 F.3d at 1020.  The Court abuses its discretion by

9  remanding for further proceedings where the record establishes no basis for serious doubt that

10 the claimant is not in fact disabled.  *Id.* at 1023.

11         Only in rare circumstances should a Court remand a case for an award of benefits, and

12 this is not such a case.  *Treichler v. Comm'r of Soc. Sec.,* 775 F3d 1090, 1099 (9th Cir. 2014).

13 Here the ALJ failed to properly assess the medical opinion evidence related to Plaintiff's

14 physical limitations. Based on the record, the Court cannot say that there is no serious doubt that

15 Plaintiff is disabled as a matter of law.  The Court should thus decline to decide in the first

16 instance exactly what her limitations amount to, and what testimony a vocational expert might

17 give following a weighing of the evidence.  Further proceedings would thus not only be useful

18 but are necessary to address and determine the true extent of Plaintiff's limitations and whether

19 she can or cannot perform gainful work activity.

20                                   **CONCLUSION**

21         Based on the foregoing, the Court recommends that the Commissioner's decision be

22 **REVERSED** and the case be **REMANDED** for further administrative proceedings under

23 sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reevaluate the medical

1  opinions of Dr. Patterson, Dr. Jilhewar, Dr. Chang, and Dr. Clark, develop the record as needed,

2  and proceed to steps four and five as appropriate.

3        Any objection to this Report and Recommendation or the attached proposed order must

4  be filed and served no later than **May 21, 2019**.  If no objections are filed, the Clerk shall note

5  the matter for **May 23, 2019** as ready for the Court's consideration.  If objections are filed, any

6  response is due within 14 days after being served with the objections.  A party filing an objection

7  must note the matter for the Court's consideration 14 days from the date the objection is filed

8  and served.  Objections and responses shall not exceed **eight** pages.  The failure to timely object

9  may affect the right to appeal.

10       DATED this 30th day of April, 2019.

11

12                                        _____

13                                        BRIAN A. TSUCHIDA
                                          Chief United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

**REPORT AND RECOMMENDATION** - 23